UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
INESSA KLIMOVITSKY,

                          Plaintiff,                      **MEMORANDUM & ORDER**
                                                                                       21-CV-755 (MKB)

                      v.

JG INNOVATIVE INDUSTRIES, INC.,
JOSEPH GOTTLIEB, ANAT GEULA, and
DOV MEDINA,

                          Defendants,

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Inessa Klimovitsky commenced the above-captioned action on February 11, 2021, (Compl., Docket Entry No. 1), against Defendants JG Innovative Industries, Inc. ("JGII"), Joseph Gottlieb, Anat Geula, and Dov Medina, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 190 *et seq.* ("NYLL").  Plaintiff filed an amended complaint on May 24, 2021, alleging the same violations against Defendants.  (Am. Compl., Docket Entry No. 12.)

       Defendants now move to dismiss Plaintiff's Title VII claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff's NYSHRL and NYCHRL claims under Rule

12(b)(1) of the Federal Rules of Civil Procedure, and Plaintiff opposes.[1] For the reasons set forth below, the Court grants Defendants' motion and dismisses Plaintiff's Title VII, NYSHRL, and NYCHRL claims without prejudice.

## I. Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

### a. The parties

Plaintiff is a female residing in New York County, New York. (Am. Compl. ¶¶ 7, 9.) Defendants hired and employed Plaintiff as an Operations Manager for JGII at Defendants' Kew Gardens location in Kew Gardens, New York. (*Id.* ¶ 8.) Plaintiff is married with four daughters. (*Id.* ¶ 29.)

JGII is a for-profit entity incorporated in New York State. (*Id.* ¶ 10.) Plaintiff alleges upon information and belief that JGII has parent corporations, subsidiaries, affiliates, divisions, successors, and assigns operating within and outside the State of New York, including an affiliate company in Israel. (*Id.* ¶ 11.) These companies misclassified certain individuals as independent contractors rather than employees. (*Id.* ¶ 12.) In addition, JGII has employed fifteen or more individuals for each working day in twenty or more weeks during the year 2020. (*Id.* ¶ 13.)

---

[1] (*See* Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 15; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 16; Defs.' Reply in Further Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 19; Pl.'s Mem in Opp. to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 17.)

Gottlieb and Geula are residents of New York employed in a supervisory role by JGII. (*Id.* ¶¶ 15–16.) Medina was and is a resident of the State of New York employed by JGII. (*Id.* ¶ 17.)

### b. Plaintiff's employment with JGII

Plaintiff was hired by JGII as a full-time Operations Manager on March 2, 2020, but because of the Covid-19 pandemic, she was furloughed eighteen days later, on March 20, 2020. (*Id.* ¶¶ 19–20.) In or about August of 2020, JGII recalled their employees, including Plaintiff, who was recalled on September 1, 2020. (*Id.* ¶ 21.) Medina was Plaintiff's coworker and superior, and Geula was their direct supervisor. (*Id.* ¶¶ 22–23.) Outside of her work, Medina was a personal trainer and fitness coach, which was "widely known" at JGII because Medina regularly trained employees, including Geula. (*Id.* ¶¶ 27–28.)

According to her regular performance reviews, Plaintiff was a "stellar employee" and satisfactorily performed all of her duties and responsibilities. (*Id.* ¶¶ 24–25.) Her work performance "was above average, as she consistently received compliments and highly positive reviews throughout her tenure with . . . JGII." (*Id.* ¶ 26.)

### c. Alleged harassment by Medina

"[D]espite Medina's marital status and Plaintiff's clear disinterest in pursuing anything romantic with him, Plaintiff became the target of an egregious discriminatory scheme of sexual harassment by Medina." (*Id.* ¶ 30.) Plaintiff had no consensual sexual relationship with him. (*Id.* ¶ 31.) Despite Geula's supervisory role, she did not step in to stop Medina's sexual harassment of Plaintiff and "was continuously complicit" in the harassment and "even at times actively participated" in this harassment. (*Id.* ¶¶ 34–35.) Gottlieb also continuously "acquiesced" to Medina's harassment without ever stepping in on Plaintiff's behalf. (*Id.* ¶ 35.)

3

For months, Plaintiff was subjected to flagrant sexual comments and actions by Medina, including inappropriate grabbing and touching of Plaintiff, unprofessional comments about Plaintiff's body and Medina's genitals, instances where Medina would suddenly pull down his pants and show Plaintiff his underwear or genitals, and even "the unsolicited use of sex toys in front of Plaintiff despite Plaintiff's repeated pleas for Medina to stop." (*Id.* ¶ 37.)

Plaintiff attempted to stop this conduct by turning away from him, begging him to stop harassing her, "calling his conduct inappropriate, insisting that she was very uncomfortable," and "pointing out that he had a wife and children at home." (*Id.* ¶ 39.) Medina refused to "[rein] in his harassment" and instead "tried to normalize his behavior." (*Id.* ¶ 40.) His unwanted sexual comments and actions persisted. (*Id.* ¶ 41.)

On December 29, 2020, Plaintiff confronted Medina about the "inappropriateness of him using a sex toy on himself in front of her just days after he brought up the subject again." (*Id.* ¶ 42.) Medina became angry, and when JGII employees came back after the New Year's holiday, Plaintiff noticed that he was avoiding her and had stopped asking her for help on tasks that she usually handled. (*Id.* ¶ 44.) However, during lunch with the entire company at the office, Medina "creepily smiled" at Plaintiff and "inappropriately hugged her" in front of everyone. (*Id.* ¶ 44.)

### d. Plaintiff's termination

On January 7, 2021, Plaintiff was told that she had been laid off effective February 1, 2021, allegedly due to Covid-19. (*Id.* ¶¶ 45–46.) No other workers were terminated at this time and Plaintiff was replaced with another employee shortly thereafter. (*Id.* ¶ 46.)

On January 12, 2021, Plaintiff met with Medina to discuss her termination. (*Id.* ¶ 48.) Medina "belittled" Plaintiff by calling her "honey," calling her concerns "misunderstandings,"

4

and offering to buy her a bouquet of flowers to make it up to her.  (*Id.* ¶¶ 50–51.)  Defendants ignored Plaintiff's complaints.  (*Id.* ¶ 53.)  Plaintiff alleges that JGII, Gottlieb, and Geula were aware of Medina's egregious sexual conduct but "failed to address and deliberately turned a blind eye."  (*Id.* ¶ 54.)

### e. EEOC Charge

On January 14, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging unlawful discrimination.  (*Id.* ¶ 3.)  Plaintiff has not yet received a right to sue letter from the EEOC and seeks to stay her claims under Title VII until the "180-day statutory conciliation period required by 42 U.S.C. § 2000e-5(f)(1)" has elapsed.  (*Id.* ¶ 4.)

### f. Plaintiff's earnings

Plaintiff alleges that Defendants intentionally misclassified her as "'exempt' from FLSA overtime requirements," as they "agreed but failed" to pay Plaintiff $60,000 per year on a weekly basis regardless of hours worked.  (*Id.* ¶ 58.)  Plaintiff alleges that she was not exempt from overtime requirements.  (*Id.* ¶ 59.)  Defendants nevertheless "'knowingly and willfully' failed to pay Plaintiff lawful overtime compensation of one and one-half times . . . her regular rate for all hours worked over forty . . . in a given workweek."  (*Id.* ¶ 60.)  Defendants also withheld Plaintiff's final paycheck.  (*Id.* ¶ 61.)

Plaintiff has suffered from emotional pain, loss of enjoyment of life, and other non-pecuniary losses, has also experienced severe emotional and physical distress, and has sought a mental health professional to deal with the emotional distress Defendants have caused her to endure.  (*Id.* ¶ 63.)

## II. Discussion

### a. Standards of review

#### i. 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii. 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. Title VII claim

Defendants argue that Plaintiff has not exhausted her administrative remedies, as she has not yet received an EEOC right-to-sue letter. (Defs.' Mem. 8–9.)

Plaintiff argues that if she had waited to file the complaint until she received a notice of right to sue, the statute of limitations on her FLSA claims would have continued to run. (Pl.'s Opp'n 10.) As a result, Plaintiff argues that she "properly filed a [C]omplaint with both her Title VII and FLSA claims within, with the understanding that her Title VII claims are stayed pending receipt of a notice of right to sue." (*Id.*)

"Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'" *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (alteration in original) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006)); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." (citation omitted)); *see also* 42 U.S.C. § 2000e-5(e) (providing procedures and deadlines for filing charges with the EEOC, following receipt of a right-to-sue letter, in court); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme . . . accordingly, it is a precondition to bringing such claims in federal court." (citation and internal quotation marks omitted)). "The complainant must file the complaint with the relevant agency 'within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a "Notice of Right to Sue" letter from the EEOC.'" *Littlejohn*, 795 F.3d at 322; *see also Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) ("Title VII requires individuals aggrieved by acts of discrimination to file a charge with the . . . EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" (quoting 42 U.S.C. § 2000e-5(e))); *Cetina v. Longworth*, 583 F. App'x 1, 2 (2d Cir. 2014) ("A Title VII employment discrimination claim must be filed with the [EEOC] . . . or New York State Division of Human Rights . . . within 300 days of the alleged unlawful practice."); *Foy v. New York*, No. 21-CV-7647, 2021 WL 4311284, at *3 (S.D.N.Y. Sept. 20, 2021) ("Before filing suit under Title VII, a plaintiff must first file a timely charge with the [EEOC] and obtain a Notice of Right to Sue."). A plaintiff bringing a Title VII claim must

8

file a complaint in federal court not more than ninety days after receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1*); see also Dawes v. City Univ. of New York*, 193 F. App'x 59, 60 (2d Cir. 2006) ("A Title VII claimant must file his complaint not more than [ninety] days after receipt of a right-to-sue letter from the EEOC." (citing *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994))). Failure to obtain a right-to-sue letter can be excused by the Court on equitable grounds. *See Pietras v. Bd. Of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999); *Syeed v. Bloomberg L.P.*, --- F. Supp. 3d ---, ---, 2021 WL 4952486, at *12 (S.D.N.Y. Oct. 25, 2021) ("[Plaintiff] unequivocally failed to exhaust her Title VII remedies, and her Title VII claims must be dismissed, unless [plaintiff] were to show that waiver should be permitted on equitable grounds.").

Plaintiff alleges in the Amended Complaint that she has yet to obtain a right-to-sue letter from the EEOC. (Am. Compl. ¶ 4.) As Defendants note, Plaintiff does "not dispute that she still has not received [a] . . . right-to-sue letter from the [EEOC]." (Defs.' Reply 5.) Despite her claim that she agreed to stay her Title VII claims until the "180-day statutory conciliation period" has passed, (Pl.'s Opp'n 10), Plaintiff provides no authority in support of her claim or any case law that supports her argument that the Court can stay litigation of her Title VII claims until after she receives a right-to-sue letter under 42 U.S.C. § 2000e-5(f)(1), (*see generally id.*). Because Plaintiff filed her Title VII claims prior to the receipt of a right-to-sue letter, and, as discussed below, has not presented any valid reasons for excusing her failure to first obtain a right-to-sue letter, the Court dismisses without prejudice her Title VII claims. *See Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 41 (2d Cir. 1992) (dismissing a Title VII claim as barred by *res judicata* and explaining that the plaintiff could have preserved the claims if she had brought an action, sought a right-to-sue letter, and then amended her complaint to include Title VII claims);

9

*Syeed*, 2021 WL 4952486, at *13 (dismissing Title VII claims because "[plaintiffs] did not file . . . state claims, wait to receive a right-to-sue letter, and only then amend their complaint to add . . . Title VII claims").

Moreover, Plaintiff does not argue that there are equitable circumstances that would prevent her from waiting to file her Title VII claims until she receives a right-to-sue letter. Although Plaintiff argues that "the statute of limitations on her FLSA claims would continue to run," (Pl.'s Opp'n 10), the statute of limitations for the FLSA is two years, and "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a); *see also Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). The events alleged in the Amended Complaint took place after September of 2020, (Am. Compl. ¶ 21), slightly more than a year ago, and, in any event, Plaintiff "could have followed" an alternative path prior to the expiration of any claim. *Woods*, 972 F.2d at 41. Plaintiff could have filed her FLSA claims and then sought a stay in the district court pending the outcome of her Title VII proceedings, then amended the Complaint to join her Title VII claims with the FLSA claims. *See id.*

Accordingly, the Court dismisses Plaintiff's Title VII claims without prejudice for failure to exhaust her administrative remedies.[2]

---

[2] Defendants also argue that the Amended Complaint does not adequately allege that JGII constitutes an "employer" under Title VII because of Title VII's numerosity requirements, which Defendant JGII allegedly does not meet. (Defs.' Mem. 3–8.) In addition, Defendants contend that the Court has the power to convert this motion to one for summary judgment "based upon the clear evidence presented by [JG] that it falls well under the [fifteen]-employee threshold required to give rise to Title VII coverage." (Defs.' Mem. 5 n.1.) Plaintiff opposes a conversion of the motion to a summary judgment motion, as such a conversion would deprive her of a "full and fair opportunity for discovery." (Pl.'s Opp'n 4.) However, because the Court

### c.  NYSHRL and NYCHRL claims

Defendants argue that if the Court dismisses Plaintiff's Title VII claims, it must also decline to exercise supplemental jurisdiction and dismiss Plaintiff's NYSHRL and NYCHRL claims because they are factually unrelated to Plaintiff's FLSA claims.  (Defs.' Mem. 9–10.)  In support, Defendants contend that the "factual basis underlying [the FLSA] claims differs markedly from the factual basis underlying her workplace discrimination/harassment claims" and therefore, they do not create a "common nucleus of operative fact" as necessary to support the exercise of supplemental jurisdiction.  (*Id.* at 10.)

Plaintiff argues that even if the Court were to dismiss the Title VII claims, Plaintiff "should be entitled to amend her complaint to provide her an opportunity to establish that her remaining federal claims under the FLSA have a common nucleus of operative fact with her claims under the NYSHRL and/or the NYCHRL."  (Pl.'s Opp'n 11.)

"Under 28 U.S.C. § 1367(a), district courts 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'"  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting 28 U.S.C. § 1367(a)).  However, "[i]n order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction."  *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  In addition, both the claim conferring subject matter jurisdiction and the supplemental claim "must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial

---

dismisses Plaintiff's Title VII claims for failure to exhaust her administrative remedies, the Court does not consider these arguments.

11

proceeding.'" *Id.* (quoting *Gibbs*, 383 U.S. at 725). "In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)); *see Warren v. Mariner Finance, LLC*, No. 20-CV-4193, 2021 WL 5232253, at *2 (2d Cir. Nov. 10, 2021) (same). Supplemental jurisdiction is proper where a state law "claim arises out of approximately the same set of events as [the] federal . . . claim." *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002).

The Court finds that in light of its dismissal of Plaintiff's Title VII claims, it lacks supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. Plaintiff has alleged that Defendants violated the FLSA when they exempted her from overtime pay and failed to provide her with her last paycheck. (Am. Compl. ¶¶ 58–62.) However, courts in this Circuit have declined to exercise supplemental jurisdiction over sexual harassment claims when the basis for jurisdiction is the FLSA. *See, e.g.*, *Guerra v. Trece Corp.*, No. 18-CV-625, 2020 WL 7028955, at *6 (S.D.N.Y. 2020) (dismissing NYSHRL and NYCHRL claims for lack of subject matter jurisdiction due to lack of "common nucleus of operative fact" with FLSA claim); *Shibetti v. Z. Restaurant, Diner and Lounge, Inc.*, 478 F. Supp. 3d 403, 408–10 (E.D.N.Y. 2020) ("Although I can easily see why plaintiffs want to place the sexual harassment proof before the same jury that considers the wage claims — the discrimination claims make defendants look terrible — those claims simply have nothing to do with whether plaintiffs were paid the minimum wage and overtime as required under the FLSA . . . In fact, the discrimination claims so profoundly overshadow the FLSA claims that even if I had supplemental jurisdiction . . . I

would try the wage and discrimination cases separately."); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (ruling that there was no jurisdiction over counterclaims alleging sexual harassment and credit card fraud, as they were not related to plaintiffs' FLSA claims). Plaintiff's allegations of harassment are not connected to the FLSA allegations. *Cf. Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 393 (E.D.N.Y. 2007) (exercising supplemental jurisdiction over plaintiff's sexual harassment claim where employee accused of sexually harassing her reduced her pay by one hundred dollars in part because plaintiff refused her advances and declining to exercise other allegations related to sexual harassment where they were not related to her failure to receive overtime compensation or a change in her wages).

As a result of the Court's dismissal of Plaintiff's Title VII claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. However, if Plaintiff repleads her Title VII claims after exhausting her administrative remedies, Plaintiff can replead her NYSHRL and NYCHRL claims.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss and dismisses Plaintiff's Title VII, NYSHRL, and NYCHRL claims without prejudice. Plaintiff may proceed with her FLSA claims.

Dated: December 1, 2021
      Brooklyn, New York

                                  SO ORDERED:

                                       s/ MKB
                                  MARGO K. BRODIE
                                  United States District Judge